**Sheldon D. CLARK, et al.**

v.

**UNITED STATES of America.**

**Civ. A. No. N–85–584.**

United States District Court,
D. Maryland.

June 4, 1985.

Armin U. Kuder, Ralph J. Temple and Philip B. Zipin, of Kuder, Temple & Smollar, P.C., Washington, D.C., counsel for plaintiffs.

Larry D. Adams, Asst. U.S. Atty., and J. Frederick Motz, U.S. Atty., Baltimore, Md., for the Dist. of Maryland; Michael J. Salem, of the U.S. Dept. of Justice, Washington, D.C., counsel for defendant.

NORTHROP, Senior District Judge.

The plaintiffs bring this action under I.R.C. § 7422 seeking an order directing the United States to refund a portion of their 1982 and 1983 paid taxes. Plaintiffs claim that the portion of their taxes going to foreign security assistance to the government of El Salvador and to Nicaraguan rebel groups in armed opposition to the Marxist-Leninist Sandinista regime was illegally assessed and spent in violation of the Foreign Assistance Act of 1961, 22 U.S.C. § 2304, the Agricultural Trade Development and Assistance Act of 1954, 7 U.S.C. § 1691, and various international treaties, charters and declarations.

The United States seeks to dismiss this suit under Fed.R.Civ.P. 12(b)(1) and (6) for

lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The Court is in receipt of the parties' memoranda. No hearing is necessary. Local Rule 6. The Court will grant the defendant's motion as discussed hereinbelow because the plaintiffs lack standing in this instance as taxpayers to challenge the specific disbursement of foreign security assistance funds.

Although the plaintiffs claim the United States has violated a variety of domestic laws and international agreements, among them only the Foreign Assistance Act creates anything resembling an enforceable limitation on the disbursement of foreign aid to specific entities. *See Crockett v. Reagan*, 558 F.Supp. 893, 896 (D.D.C.1982), *aff'd* 720 F.2d 1355 (D.C.Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984). The Act reads in part:

> Except under circumstances specified in this section, no security assistance may be provided to any country the government of which engages in a consistent pattern of gross violations of internationally recognized human rights.

22 U.S.C. § 2304(a)(2).

To prove that the government of El Salvador has engaged in a consistent pattern of human rights violations, the plaintiffs have produced two eyewitness affidavits, and have promised that other witnesses will testify to violations at trial.

■ The plaintiffs, however, are without standing to challenge the actions of the United States under section 2304 of the Foreign Assistance Act. The instant suit, despite the plaintiffs' status as taxpayers and the requested tax refund, is not a challenge to the taxing powers of the United States but to the spending power. The plaintiffs allege the United States has illegally spent legitimately collected public funds. As such, this suit must meet the taxpayer standing criteria of *Frothingham v. Mellon*, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), and *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

■ "Standing" is the requirement that the complaining party "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). In *Frothingham, supra*, the plaintiff sought to enjoin the spending of public funds under the federal Maternity Act. She challenged the Act as unconstitutional. She asserted her standing to enjoin these allegedly unconstitutional expenditures because as a taxpayer she would suffer injury by the requirement to pay extra taxes to support the program. The Supreme Court, however, denied the taxpayer standing to sue because she had not shown "some direct injury as the result of the [expenditure] and not merely that [she] suffers in some indefinite way in common with people generally." *Frothingham, supra*, 262 U.S. at 488, 43 S.Ct. at 601. "If one taxpayer may champion and litigate such a cause, then every taxpayer may do the same ... in respect of every ... appropriation act and statute that requires the outlay of public money.... The bare suggestion of such a result, with its attendant inconveniences, goes far to sustain the conclusion ... that a suit of this character cannot be maintained." *Id.* at 487, 43 S.Ct. at 601. Obviously, the instant taxpayers propose to bring such a suit.

■ A narrow exception to this strict standing requirement was created by *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The exception, however, is only available when the taxpayer can establish that the challenged expenditure exceeds specific constitutional limitations other than general grounds of due process imposed upon the taxing and spending power. *Id.* at 102–103, 88 S.Ct. at 1953–1954; *see also, Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 478–81, 102 S.Ct. 752, 761–63, 70 L.Ed.2d 700 (1982). The instant plaintiffs do not propose to specifically challenge the

constitutionality of the expenditures at issue.

Rather, the plaintiffs would void the disputed tax portion because it violates a statute, the Foreign Assistance Act. The mere assertion of statutory grounds, however, only raises the issue of whether plaintiffs have standing under the statute asserted. In *United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974), the Supreme Court rejected a taxpayer's standing to challenge under 50 U.S.C. § 403j(b) the asserted failure of Congress to require the President to provide more detailed reports of CIA expenditures. *Id.* at 175, 94 S.Ct. at 2945. The statute did not provide standing for taxpayer suits because it did not in itself confer any standing to a private party to seek its enforcement. Instead, as a regulation solely affecting conduct between the coordinate legislative and executive branches, only those branches could bring suit to enforce it.

In the instant case, the taxpayer is apparently challenging the asserted failure of both Congress and the President to follow the guidelines of the Foreign Assistance Act in providing aid programs to Central America. The Foreign Assistance Act, however, specifically section 2304, does not create standing for any taxpayer or any private party to sue for its enforcement. It is a section clearly enacted to effect the relationship between the Congress and the President over disbursing foreign aid funds in light of an official policy of concern for human rights. The only parties with standing to seek adjudication under section 2304 are the executive and legislative branches. One need only read the plain language of the section to reach this conclusion. The section requires the executive branch to satisfy certain conditions made by Congress before foreign aid can be disbursed to foreign governments or entities.[1]

Furthermore to grant a private party standing to sue for restraint of either branches' actions would violate Article III of the Constitution. All questions "relevant to the standing inquiry must be answered by reference to the Art. III notion that federal courts may exercise power only ... when adjudication is 'consistent with a system of separated powers and [the dispute is one] traditionally thought to be capable of resolution through the judicial process.'" *Allen v. Wright*, —— U.S. ——, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984), *quoting Flast v. Cohen*, 392 U.S. 83, 97, 88 S.Ct. 1942, 1951, 20 L.Ed.2d 947 (1968). To allow these taxpayers to sue for enforcement of section 2304 would directly confront the traditional limitations upon the judicial branch within Article III. As Chief Justice Burger stated in *United States v. Richardson, supra:*

> Any other conclusion would mean that the Founding Fathers intended to set up something in the nature of an Athenian democracy or a New England town meeting to oversee the conduct of the National Government by means of lawsuits in federal courts. The Constitution created a *representative* Government with the representatives directly responsible to their constituents.... Lack of standing within the narrow confines of Art. III jurisdiction does not impair the right to assert their views in the political forum or at the polls.

418 U.S. at 179, 94 S.Ct. at 2947 (emphasis in original).

These taxpayers cannot therefore challenge under the statutes and laws asserted herein the legality of any portion of their 1982 and 1983 taxes. Their request for a refund is thereby denied and this action dismissed.

---

1. Thus, in *Crocket v. Reagan, supra,* the only reported case under section 2304, the court proceeded to reach and dismiss the suit on the political question issue only because the plaintiffs were members of Congress.